SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
    RegisWorley@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA 92130
TELEPHONE: 858.252.6502
FACSIMILE: 858.252.6503

Attorneys for Plaintiff
MERIDIAN INTERNATIONAL CO., LTD.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MERIDIAN INTERNATIONAL CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> TOUGHBUILT INDUSTRIES, INC., <br><br> Defendant. | Case No. 8:24-CV-01840 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

Case No. 8:24-CV-01840

51382730

Plaintiff Meridian International Co., Ltd., by and through its undersigned counsel, brings this action for patent infringement against ToughBuilt Industries, Inc., and alleges as follows:

## PARTIES

1.    Meridian International Co., Ltd. ("Meridian") is a corporation organized and existing under the laws of The People's Republic of China having its principal place of business at 1886 Laiyin Road, Songjiang, Shanghai, China.

2.    Defendant ToughBuilt Industries, Inc. ("ToughBuilt") is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business at 25371 Commercentre Drive, Suite 200, Lake Forest, CA 92630.

## FACTUAL ALLEGATIONS

### Background of Meridian

3.    Meridian designs and manufactures tools, hardware, and storage and organizational equipment and systems. For more than 30 years, Meridian has served customers around the world in supporting the design, manufacture, and sale of such products.

4.    Meridian is an industry-leading designer and manufacturer of modular storage systems, and provides unique and innovative solutions in the realm of modular storage to meet customer demands.

5.    In connection with its research and development efforts to improve its modular storage systems, Meridian has developed multiple innovative interlocking and latching solutions, including those protected by the valid United States patents referenced below.

### Jurisdiction and Venue

6.    This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, et seq., including 35 U.S.C. § 271. This Court has original and exclusive subject matter jurisdiction over patent infringement claims for relief under 28 U.S.C. §§ 1331, 1338(a).

Case No. 8:24-CV-01840

51382730

7.     Personal jurisdiction exists generally over ToughBuilt because ToughBuilt is a corporation organized under the laws of the State of Nevada, with its principal place of business in this district.

8.     Venue is proper in this Court under 28 U.S.C. § 1391 as well as 28 U.S.C. § 1400(b) because ToughBuilt resides within this District in the State of California, where ToughBuilt is a corporation organized under the laws of the State of Nevada with its principal place of business in the Central District of California. ToughBuilt committed at least one act of infringement in this District, and has a physical location in this District from which it conducts its business. Furthermore, a substantial part of the events or omissions giving rise to the claims pleaded herein occurred within this judicial district, or a substantial part of property that is the subject of this action is situated within this judicial district.

### The Patents-in-Suit

9.     Meridian is the owner of the entire right, title, and interest in and to U.S. Patent No. 11,986,946 (the "'946 Patent"), entitled "Connection Structure of Module, Storage Box and Storage Assembly," which was duly issued by the United States Patent and Trademark Office on May 21, 2024. A copy of the '946 Patent is attached as Exhibit A.

10.     Meridian is the owner of the entire right, title, and interest in and to U.S. Patent No. 11,192,689 (the "'689 Patent"), entitled "Stacked Storage Container Latch," which was duly issued by the United States Patent and Trademark Office on December 7, 2021. A copy of the '689 Patent is attached as Exhibit B.

### Defendant's Wrongful Conduct Pertaining to the '946 Patent

11.     ToughBuilt designs, manufactures, uses, imports, offers for sale, and/or sells modular storage equipment under the ToughBuilt trade name throughout the United States that directly competes with the offerings from Meridian.

51382730

12.    Defendant, under the ToughBuilt trade name, has been and is currently making, using, offering for sale, importing, selling, distributing, and/or servicing products that infringe at least one claim of the '946 Patent.

13.    Defendant offers for sale certain modular stackable storage boxes that infringe Meridian's rights including by way of example, but not limited to, at least the following StackTech® line of products: TOUGHBUILT STACKTECH 22.3-in W x 26-in H Black Plastic/Metal Wheels Tool Box (Model TB-B1-B-70R); TOUGHBUILT STACKTECH XL 21-in W x 15.6-in H Black Plastic/Metal Tool Box (Model TB-B1-B-70); TOUGHBUILT STACKTECH Large 21-in W x 11.7-in H Black Plastic/Metal Tool Box (Model TB-B1-B-50); TOUGHBUILT STACKTECH 21-in Black Plastic/Metal Tool Box (Model TB-B1-B-30); TOUGHBUILT STACKTECH Crate 21-in W x 11.4-in H Black Plastic/Metal Tool Box (Model TB-B1-X-50); TOUGHBUILT STACKTECH Compact 10.4-in Black Plastic/Metal Tool Box (Model TB-B1-B-60C); TOUGHBUILT STACKTECH 11-Compartment Large Plastic Small Parts Organizer (Model TB-B1-O-30); TOUGHBUILT 22-Compartment STACKTECH Low-Profile Plastic Small Parts Organizer (Model TB-B1-O-10); TOUGHBUILT 12-Compartment STACKTECH Compact Low-Profile Plastic Small Parts Organizer (Model TB-B1-O-10C); TOUGHBUILT STACKTECH XL 21-in W x 15.6-in H Ball-bearing 3-Drawer Black Plastic/Metal Tool Box (Model TB-B1-D-70-3); TOUGHBUILT STACKTECH 21-in W x 8.8-in H Ball-bearing 1-Drawer Black Plastic/Metal Tool Box (Model TB-B1-D-30-1); TOUGHBUILT STACKTECH XL White 38-Quart Insulated Chest Cooler (Model TB-B1-C-70); and TOUGHBUILT STACKTECH Compact White 16-Quart Insulated Chest Cooler (Model TB-B1-C-60C) (collectively, the "Accused StackTech Products"). The Accused StackTech Products have been on sale in the United States, including at numerous Lowe's stores.

14.    Defendant lists Accused StackTech Products on its website as part of its StackTech® line of products. (*See*, Exhibit C - https://stacktech.toughbuilt.com/catalog/) (hereinafter "Product Webpage").

Case No. 8:24-CV-01840

15.    The manner of use of the Accused StackTech Products is described at least

in part on its website promotion page for the StackTech product line. (*See*, Exhibit D – a

portion of https://stacktech.toughbuilt.com/advantage/) (hereinafter "Product

Documentation").

16.    Defendant has directly infringed, contributed to the infringement of, and/or

continues to induce users of the Accused StackTech Products to infringe, one or more

claims of the '946 Patent, by intentionally developing, making, using, marketing,

advertising, providing, sending, importing, distributing, and/or selling the Accused

StackTech Products and accompanying documentation, materials, components, training,

or support and aiding, abetting, encouraging, promoting, or inviting use thereof.

17.    Each of the Accused StackTech Products include elements that satisfy the

limitations of, for example, claim 1 of the '946 Patent. Claim 1 of the '946 patent states:

[1a] A storage box comprising:
[1b]    a first connection part disposed on one area of said storage box connectable to a second connection part of another storage box;
[1c]    wherein, said first connection part comprises a mounting body, a locking buckle movable with respect to said mounting body, and a first resilient member located between said mounting body and said locking buckle, wherein said first resilient member keeping said locking buckle automatically in a locked state;
[1d]    wherein, said second connection part of the other storage box comprises a mating part interlockable with the locking buckle,
[1e]    wherein the locking buckle is configured to slide inward with respect to the mounting part so that the locking buckle is automatically lockable with the mating part of the other storage box by action of said first resilient member when the locking buckle is aligned with the mating part of the other storage box;
[1f]    a locking part cooperating with the locking buckle, wherein manual movement of the locking part causes the locking buckle to move to an unlocked state; and
[1g1]  a stop part, wherein when the stop part projects outward with respect to a locking path of the locking part, said locking part is not automatically lockable and said first connection part is in a state of remaining unlocked from said second connection part, [1g2] wherein the stop part is retractable, said stop part being extended when said first connection part is in a holding unlocked state with said second connection part of the other storage box, and said stop part being compressed when said first connection part is in a locked state with said second connection part.

18.    By way of example, element [1a] of claim 1 of the '946 Patent recites "a

storage box."

19.    An exemplary StackTech Product is the TOUGHBUILT STACKTECH 21-in Black Plastic/Metal Tool Box (Model TB-B1-B-30, hereinafter the "Accused Tool Box"), is shown below, which constitutes a storage box. (*See*, Figure 1).



**Figure 1**

(Image of the Accused Tool Box, an exemplary StackTech Product).

20.    Element [1b] of claim 1 of the '946 Patent recites a storage box comprising "a first connection part disposed on one area of said storage box connectable to a second connection part of another storage box." In accordance with element [1b] of claim 1, the Accused Tool Box (Figure 1 above) includes a first connection part disposed on the front face of the box, near the bottom surface (*i.e.*, on a first area of the box). (*See*, Figure 2).



**Figure 2**

(Image of the Accused Tool Box partially showing the front face of the Accused Tool

51382730

Box). This first connection part is connectable to a second connection part of another

storage box.  This analysis uses the TOUGHBUILT STACKTECH 11-Compartment

Large Plastic Small Parts Organizer (Model TB-B1-O-30,  hereinafter the "Accused

Organizer") as the second storage box, though other StackTech Products share the same

features as shown here. (*See*, Exhibit C, Product Webpage and Exhibit D, Product

Documentation).  The second connection part is disposed near an outer edge of the lid,

or the top surface, of the Accused Organizer and defines a recessed area. (*See*, Figure 3).



**Figure 3**

(Image of the Accused Organizer partially showing the top surface of the Accused

Organizer).

21.    Element [1c] of claim 1 of the '946 Patent further recites that "said first

connection part comprises a mounting body, a locking buckle movable with respect to

said mounting body, and a first resilient member located between said mounting body

and said locking buckle, wherein said first resilient member keeping said locking buckle

automatically in a locked state."

22.    The first connection part of the Accused Tool Box includes a mounting

body (item A in Figure 4 below) and a locking buckle (item B in Figure 4 below).

51382730



**Figure 4**

(Image of the Accused Tool Box partially showing the first connection part). The locking buckle is located on the locking part and can move inward and outward within an opening defined within the mounting body.  That is, the locking buckle is movable with respect to the mounting body.

23.    As shown below in an alternative view of the mounting body, removed from the Accused Tool Box, a first resilient member is positioned between the rearmost end of the mounting body (item A in Figure 5) and the locking buckle (item B in Figure 5).



**Figure 5**

(Image of mounting body removed from the Accused Tool Box).  As shown above in

Case No. 8:24-CV-01840

51382730

Figure 5, the resilient member(s) biases the locking buckle in an outward position, which is the locked state (the locking buckle is extended out with respect to the mounting body to be secured to the second connection part of the Accused Organizer).

24.    Element [1d] of claim 1 of the '946 Patent further recites that "said second connection part of the other storage box comprises a mating part interlockable with the locking buckle."

25.    The second connection part, located on the lid of the second StackTech Product, defines a recess, which is the mating part (item C in Figure 6 below).



**Figure 6**

(Image of the Accused Organizer partially showing the top surface of the Accused Organizer).

26.    Element [1e] of claim 1 of the '946 Patent further recites that "the locking buckle is configured to slide inward with respect to the mounting part so that the locking buckle is automatically lockable with the mating part of the other storage box by action of said first resilient member when the locking buckle is aligned with the mating part of the other storage box."

27.    As shown below in Figures 7A-7D, the first connection part of the Accused Tool Box is aligned with the second connection part of the Accused Organizer when the Accused Tool Box is positioned atop the Accused Organizer.  If the locking part of the Accused Tool Box is extended, the locking buckle contacts the second connection part (at the red arrow in Figure 7A), which results in a force that is applied to the locking buckle that forces it to slide inward (Figures 7B and 7C).  The locking buckle remains

retracted until such time that the locking part is clear of the second connection part and aligned with the mating part, at which time the locking buckle extends due to the bias of the resilient member and automatically locks with the recess of the Accused Organizer (Figure 7D).

   

**Figure 7A**          **Figure 7B**          **Figure 7C**          **Figure 7D**

(Images of the Accused Tool Box being lowered onto the Accused Organizer).

28.     Element [1f] of claim 1 of the '946 Patent further recites that the storage box also comprises "a locking part cooperating with the locking buckle, wherein manual movement of the locking part causes the locking buckle to move to an unlocked state."

29.     The storage box includes a locking part (item D in Figures 8 and 9 below) that includes the locking buckle (item B in Figures 8 and 9 below).  As the locking buckle is disposed on the locking part, movement of the locking part necessarily results in movement of the locking buckle.



**Figure 8**

(Image of the Accused Tool Box partially showing the locking part and the locking

Case No. 8:24-CV-01840

51382730

buckle).  In this regard, as the locking part is manually moved from an extended to a retracted configuration, such as by movement of the silver-colored handle from a locked to an unlocked configuration, the locking buckle is moved to an unlocked stated in which it is retracted relative to the mounting body (see item B in Figures 9A and 9B below).  Specifically, when the silver-colored handle is in a locked position, the locking buckle is extended (see item B in Figure 9A).  When the silver-colored handle is in an unlocked position, the locking buckle is retracted (see item B in Figure 9B).

 

**Figure 9A**                                    **Figure 9B**

(Images of the Accused Tool Box in locked (Figure 9A) and unlocked (Figure 9B) configurations).

30.    Element [1g1] of claim 1 of the '946 Patent further recites that the storage box also comprises "a stop part, wherein when the stop part projects outward with respect to a locking path of the locking part, said locking part is not automatically lockable and said first connection part is in a state of remaining unlocked from said second connection part."

31.    As shown in Figures 10A and 10B below, the Accused Tool Box also includes a stop part, specifically a horizontal bar (item E in Figures 10A and 10B) that has guide grooves, the horizontal bar being attached to the silver-colored handle mechanism.  *See* Figure 10A (Accused Tool Box in an override unlocked configuration) and Figure 10B (Accused Tool Box in locked configuration).

Case No. 8:24-CV-01840

51382730

 

**Figure 10A**                    **Figure 10B**

(Images of the Accused Tool Box slightly disassembled partially showing the first
connection part). The first connection part is in an override unlocked position (locking
buckle retracted, as shown above in Figure 10A) when the stopping part is extended or
projecting outward (fully to the right in Figure 10A) with respect to the locking path (the
inward and outward direction of movement of the locking part) of the locking part. In
this configuration, the stopping part prevents forward movement (extension) of the
locking part and the locking buckle, thereby maintaining the device in a state of
remaining unlocked with the second connection part and preventing automatic locking.

32.    Element [1g2] of claim 1 of the '946 Patent further recites that "the stop
part is retractable, said stop part being extended when said first connection part is in a
holding unlocked state with said second connection part of the other storage box, and
said stop part being compressed when said first connection part is in a locked state with
said second connection part."

33.    As shown above in Figure 10A and Figure 10B, the stop part (item E) may
alternate between an extended and a retracted, or compressed, position with respect to
the locking path (extended to the right in Figure 10A and retracted to the left in Figure
10B).

34.    When the stop part is extended (Figure 10A), the first connection part is in a
holding unlocked state relative to the Accused Organizer, in which the locking part and

51382730

1  locking buckle of the Accused Tool Box remain retracted relative to the mounting body.
2  When the stop part is retracted (Figure 10B), the first connection part is in a locked state
3  relative to the Accused Organizer, in which the locking part and locking buckle of the
4  Accused Tool Box are extended relative to the mounting body.

5         35.    Each of the Accused StackTech Products includes the same features and
6  functionality as the "other storage box" as recited in claim 1 of the '946 Patent.
7  Therefore, each of the Accused StackTech Products meets the requirements for the
8  infringing "other storage box" of that claim for at least these same reasons as set forth
9  above.  Moreover, with the exception of the TOUGHBUILT STACKTECH 22.3-in W x
10  26-in H Black Plastic/Metal Wheels Tool Box (Model TB-B1-B-70R), each of the
11  Accused StackTech Products includes the same features and functionality as the "storage
12  box" as recited in claim 1 of the '946 Patent.  Therefore, each of those Accused
13  StackTech Products meets the requirements for the infringing "storage box" of that
14  claim for at least these same reasons as set forth above.

15            **Defendant's Wrongful Conduct Pertaining to the '689 Patent**

16         36.    Upon information and belief, ToughBuilt directly or through its agents
17  contracted with a third party to provide products under the third-party brand "Kobalt"
18  having "CaseStack" capability.  CaseStack products are designed to interconnect with
19  other CaseStack products.  The products provided by ToughBuilt that have the
20  CaseStack capability are configured to interconnect with other CaseStack products sold
21  under the Kobalt brand, including those originating from Meridian.

22         37.    In particular, ToughBuilt manufactures the Kobalt CaseStack Blue
23  Polyester 20-in Zippered Tool Bag (model number KB-CS-S20) and Kobalt CaseStack
24  Blue Polyester 20-in Tool Tote (model number KB-CS-T20) (together, the "Accused
25  Modular Tool Bags").

26         38.    The mechanisms by which the CaseStack products interconnect is in
27  accordance with the '689 patent.

28

39.    The Accused Modular Tool Bags are specifically designed to connect to other CaseStack products using latching technology in accordance with one or more claims of the '689 patent.  This type of interconnectivity is promoted through the marketing and sales of products having the modular "CaseStack" designation.

40.    ToughBuilt designs, manufactures, uses, imports, offers for sale, and/or sells the Accused Modular Tool Bags throughout the United States.

41.    ToughBuilt, under the Kobalt trade name, has been and is currently making, using, offering for sale, importing, selling, distributing, and/or servicing products that infringe at least one claim of the '689 Patent.

42.    Upon information and belief, ToughBuilt, directly or through its contractual business partners, offers the Accused Modular Tool Bags for sale at numerous Lowe's stores.

43.    Defendant has directly infringed, contributed to the infringement of, and/or continues to induce users of the Accused Modular Tool Bags to infringe, one or more claims of the '689 Patent, by intentionally developing, making, using, marketing, advertising, providing, sending, importing, distributing, and/or selling the Accused Modular Tool Bags and accompanying documentation, materials, components, training, or support and aiding, abetting, encouraging, promoting, or inviting use thereof.

44.    Each of the Accused Modular Tool Bags include elements that satisfy the limitations of, for example, claim 1 of the '689 Patent. Claim 1 of the '689 patent states:

> [1a] A stackable storage system comprising:
> [1b]    a first storage container configured and arranged to be selectively connected to a second storage container, wherein the first storage container comprises of at least one locking groove and the second container comprises a sliding mechanism for selectively engaging the locking groove to connect and hold the first storage container to the second storage container, and wherein a portion of the sliding mechanism extends laterally away from a side surface of the second container when the sliding mechanism is disengaged from the locking groove and wherein the portion of the sliding mechanism is coplanar with the side surface of the second container when the sliding mechanism is engaged with the locking groove
> [1c]    wherein the first storage container comprises of at least one locking groove and the second container comprises a sliding mechanism for selectively engaging the locking groove to connect and hold the first storage container to the second storage container, and wherein a portion of the sliding mechanism extends laterally away from a side surface of the second container when the sliding

51382730

mechanism is disengaged from the locking groove and wherein the portion of the sliding mechanism is coplanar with the side surface of the second container when the sliding mechanism is engaged with the locking groove

[1d]    wherein a portion of the sliding mechanism extends laterally away from a side surface of the second container when the sliding mechanism is disengaged from the locking groove and wherein the portion of the sliding mechanism is coplanar with the side surface of the second container when the sliding mechanism is engaged with the locking groove.

45.    By way of example, element [1a] of claim 1 of the '689 Patent recites "a stackable storage system."

46.    An exemplary Accused Modular Tool Bag (model number KB-CS-S20, "Tool Bag") is shown below. (See Figure 11.)  The Tool Bag together with any of the Kobalt CaseStack storage boxes, including but not limited to the Kobalt CaseStack Plastic Tool Box (KCS-SSBOX1-03, hereinafter the "Kobalt Box") is a stackable storage system.



**Figure 11**

(Image of the Tool Bag, with red circle added identifying an area having the CaseStack technology).

47.    In accordance with element [1b] of claim 1, the Tool Bag is a first storage container, including for the storage of tools, as shown in Figure 11.  The Kobalt Box is one of many Kobalt storage containers that include the CaseStack interlocking technology, and therefore satisfies the second storage container limitation, as shown in Figure 12.

Case No. 8:24-CV-01840



**Figure 12.**

(Image of the Kobalt Box, with red circle added identifying an area having the CaseStack technology).  The Tool Bag is configured and arranged to be selectively connected to the Kobalt Box via the interlocking modular CaseStack technology.

48.    In accordance with element [1c], the Tool Bag (the first storage container) includes at least one locking groove, shown in the circled portion of Figure 11 and Figure 13.



**Figure 13.**

(Image of the Tool Bag, with red oval added).  The Kobalt Box (the second storage container) includes a sliding mechanism, shown with the blue component in the circled portion of Figure 12 and Figure 14.



**Figure 14.**

(Image of the Kobalt Box, with red oval added). The sliding mechanism near the top of the Kobalt Box is configured to selectively engage with the locking groove near the bottom of Tool Bag in order to connect the Tool Bag to the Kobalt Box and hold them together, as indicated in Figure 15, wherein the Tool Bag and the Kobalt Box are in position to be connected via inward movement of the blue sliding mechanism of the Kobalt Box.



**Figure 15.**

(Image of the Tool Bag and the Kobalt Box).

Case No. 8:24-CV-01840

51382730

49.    In accordance with element [1d] of claim 1, the blue sliding mechanism of the Kobalt Box extends away from the side of the Kobalt Box (the second container) when the blue sliding member is disengaged from the locking groove of the Tool Bag, as shown in Figure 16.



**Figure 16.**

(Image of the Kobalt Box in which the blue sliding mechanism is in the open position). Likewise, the blue sliding mechanism of the Kobalt Box is coplanar with the side of the Kobalt Box when the blue handle is in the closed position, as when it is engaged with the locking groove of the Tool Bag, as shown in Figure 17.



**Figure 17.**

(Image of the Kobalt Box in which the blue sliding mechanism is in the closed position).

50.    Both of the Accused Modular Tool Bags include the same features and functionality as the exemplary Accused Modular Tool Bag (model number KB-CS-S20) as recited in claim 1 of the '689 Patent.  Therefore, both of the Accused Modular Tool Bags meet the elements that claim for at least these same reasons as set forth above.

Case No. 8:24-CV-01840

51382730

## COUNT I

### Infringement of U.S. Patent No. 11,986,946

51.    Meridian incorporates by reference paragraphs 1-50 as though fully set forth herein.

52.    Defendant has infringed and is currently infringing, literally and/or under the doctrine of equivalents, the '946 Patent by, among other things, making, using, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes that infringe one or more claims of the '946 Patent, including but not limited to the Accused StackTech Products.

53.    Defendant also indirectly infringes the '946 Patent in violation of 35 U.S.C. § 271(b) and (c). Defendant induced and is inducing infringement of the '946 Patent by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere within the United States, without license or authority, for example, the Accused StackTech Products, which fall within the scope of at least claim 1 of the '946 Patent. On information and belief Defendant provides directions, instructions, and/or other materials that encourage and facilitate infringing use by others.  Defendant has sold and is selling at least the Accused StackTech Products with the knowledge and intent that customers who buy the products will commit infringement by using the products, and, therefore, those customers have been and are directly infringing the '946 Patent.

54.    Defendant has contributorily and is currently contributorily infringing the '946 Patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing into this judicial district and elsewhere in the United States, without license or authority, products, for example, the Accused StackTech Products, or components of those products which constitute a material part of the '946 Patent, knowing that such products and/or components are especially made or especially

Case No. 8:24-CV-01840

adapted for use in the infringement of the '946 Patent, including but not limited to claim 1, and are not staple articles of commerce suitable for substantial non-infringing use.

55.    As a direct and proximate result of the infringement of the '946 Patent by Defendant, Meridian has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law. Meridian also has been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

56.    On June 5, 2024, Meridian, through its counsel, sent a cease-and-desist letter ("Notice Letter") to Defendant's counsel.  The Notice Letter included a copy of the '946 patent and claim charts comparing Defendant's products to claims of the '946 patent.  The Notice Letter demanded that Defendant discontinue its infringing activities and requested a response by June 21, 2024.  Defendant did not respond by the requested date.  As of the filing of this Complaint, Meridian has not received a response from Defendant or its counsel.  Upon information and belief, Defendant has had actual notice of the '946 Patent and the allegations of infringement no later than when it received the Notice Letter.

57.    Having actual notice of Meridian's '946 Patent, and with the lack of any communication from ToughBuilt in response to the letter, ToughBuilt's continued infringement of the '946 Patent is willful and deliberate, and, therefore, Meridian is entitled to damages, including enhanced damages, under 35 U.S.C. § 284.

## COUNT II

### Infringement of U.S. Patent No. 11,192,689

58.    Meridian incorporates paragraphs 1-50 as though fully set forth herein.

59.    Defendant has infringed and is currently infringing, literally and/or under the doctrine of equivalents, the '689 Patent by, among other things, making, using, selling, offering for sale, and/or importing within this judicial district and elsewhere in the United States, without license or authority, products and/or processes that infringe one or more claims of the '689 Patent, including but not limited to the Accused Modular Tool Bags.

Case No. 8:24-CV-01840

60.     Defendant also indirectly infringes the '689 Patent in violation of 35 U.S.C. § 271(b) and (c). Defendant induced and is inducing infringement of the '689 Patent by, among other things, actively and knowingly aiding and abetting others to directly make, use, offer for sale, sell, and/or import within this judicial district and elsewhere within the United States, without license or authority, for example, the Accused Modular Tool Bags, which fall within the scope of at least claim 1 of the '689 Patent. On information and belief Defendant provides directions, instructions, and/or other materials that encourage and facilitate infringing use by others. Defendant has sold and is selling at least the Accused Modular Tool Bags with the knowledge and intent that customers who buy the products will commit infringement by using the products, and, therefore, those customers have been and are directly infringing the '689 Patent.

61.     Defendant has contributorily and is currently contributorily infringing the '689 Patent, in violation of 35 U.S.C. § 271(c), by, among other things, selling, offering for sale, and/or importing into this judicial district and elsewhere in the United States, without license or authority, products, for example, the Accused Modular Tool Bags, or components of those products which constitute a material part of the '689 Patent, knowing that such products and/or components are especially made or especially adapted for use in the infringement of the '689 Patent, including but not limited to claim 1, and are not staple articles of commerce suitable for substantial non-infringing use.

62.     As a direct and proximate result of the infringement of the '689 Patent by Defendant, Meridian has suffered and will continue to suffer irreparable injury for which there is no adequate remedy at law. Meridian also has been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

63.     The filing of this Complaint constitutes actual notice to Defendant of the '689 patent and of Defendant's infringement of that patent.

64.     Having actual notice of Meridian's '689 patent, any continued infringement by the Defendant of the patent is willful and deliberate, and, therefore, Meridian is entitled to damages, including enhanced damages, under 35 U.S.C. § 284.

Case No. 8:24-CV-01840

## JURY DEMAND

Meridian requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Meridian requests that the Court grant the following relief:

A.      For judgment in favor of Meridian on all of its claims against Defendant;

B.      For judgment that Defendant has infringed and continues to infringe the '946 Patent;

C.      For judgment that the '946 Patent is valid and enforceable;

D.      For judgment that Defendant has willfully infringed the '946 Patent;

E.      For a preliminary and permanent injunction prohibiting Defendant and all persons or entities acting in concert with Defendant from infringing the '946 Patent;

F.      For judgment that Defendant has infringed and continues to infringe the '689 Patent;

G.      For judgment that the '689 Patent is valid and enforceable;

H.      For judgment that Defendant has willfully infringed the '689 Patent;

I.      For a preliminary and permanent injunction prohibiting Defendant and all persons or entities acting in concert with Defendant from infringing the '689 Patent;

J.      For a judgment awarding Meridian damages adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, in an amount to be determined at trial;

K.      An award of treble damages and/or exemplary damages due to Defendant's willful misconduct under 35 U.S.C. § 284;

L.      For a finding that this case is exceptional and an award of interest, costs, expenses, and reasonable attorney's fees incurred by Meridian in prosecuting this action as provided by 35 U.S.C. § 285;

M.      For an award of pre-judgment and post-judgment interest; and

N.      For such other and further relief as this Court or a jury may deem just and proper.

DATED:  August 21, 2024

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

/s/ Scott A. Penner

SCOTT A. PENNER, CA Bar No. 253716
    ScottPenner@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
    RegisWorley@eversheds-sutherland.com
12255 EL CAMINO REAL, SUITE 100
SAN DIEGO, CALIFORNIA  92130
TELEPHONE:     858.252.6502
FACSIMILE:     858.252.6503

Attorneys for Plaintiff
MERIDIAN INTERNATIONAL CO., LTD.

Case No. 8:24-CV-01840

51382730