SCOTT A. PENNER, CA Bar No. 253716
   ScottPenner@eversheds-sutherland.com
REGIS C. WORLEY, JR., CA Bar No. 234401
   RegisWorley@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
12255 EL CAMINO REAL, SUITE 100 SAN
DIEGO, CALIFORNIA  92130
TELEPHONE: 858.252.6502
FACSIMILE:  858.252.6503

Attorneys for Plaintiff
MERIDIAN INTERNATIONAL CO., LTD.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MERIDIAN INTERNATIONAL CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> TOUGHBUILT INDUSTRIES, INC., <br><br> Defendant. | Case No. 8:24-cv-01840 DDP (JDEx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date:　　　September 23, 2024 <br> Time:　　　10:00 a.m. <br> Place:　　　Courtroom 9C <br> Judge:　　　Honorable Dean D. Pregerson |

Case No. 8:24-cv-01840 DDP (JDEx)

51374548

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................. 1

II.   STATEMENT OF FACTS ..................................................... 1

    A.    MERIDIAN'S HISTORY AND ITS PRODUCTS ..................... 1

    B.    MERIDIAN'S PATENTS ..................................................... 2

        1.    Meridian's U.S. Patent No. 11,986,946 ......................... 3

        2.    Meridian's U.S. Patent No. 11,192,689 ......................... 3

    C.    FACING FINANCIAL RUIN, TOUGHBUILT COPIED MERIDIAN'S TECHNOLOGY. ............................................ 4

        1.    ToughBuilt's StackTech Products Infringe the '946 Patent. ....................................................................... 4

        2.    ToughBuilt's CaseStack Tool Bags Infringe the '689 Patent. ....................................................................... 5

    D.    MERIDIAN ATTEMPTED TO STOP TOUGHBUILT'S INFRINGEMENT. ........................................................... 5

III.  LEGAL STANDARD ........................................................... 6

IV.   MERIDIAN IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF. ........ 6

    A.    MERIDIAN WILL PREVAIL ON THE MERITS. ..................... 6

        1.    The Claim Terms Have Their Plain and Ordinary Meanings. .................................................................. 7

        2.    ToughBuilt Infringes at Least Claim 1 of the '946 Patent. ....................................................................... 8

        3.    ToughBuilt Infringes at Least Claim 1 of the '689 Patent. ....................................................................... 13

        4.    The Asserted Patents Are Valid. ................................. 16

    B.    MERIDIAN WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION. .............................................................. 17

        1.    Direct Competition Renders Injunctive Relief Appropriate. ............................................................. 17

        2.    ToughBuilt's Infringement Is Causing Irreparable Harm to Meridian's Business Opportunities. ......................... 18

i                          Case No. 8:24-cv-01840 DDP (JDEx)

51374548

# TABLE OF CONTENTS
*Continued*

**PAGE**

        3.       ToughBuilt Is Unlikely to Satisfy a Monetary Award. ............... 21

        4.       Meridian Does Not License Its Patents. ........................................ 22

  C.    THE BALANCE OF THE HARDSHIPS FAVORS ENTERING AN INJUNCTION. ............................................................................................... 23

  D.    THE PUBLIC INTEREST FAVORS ENTERING AN INJUNCTION. ............................................................................................... 24

V.     CONCLUSION .................................................................................................... 25

Case No. 8:24-cv-01840 DDP (JDEx)

51374548

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Transit Dynamics, Inc. v. Ridge Corp.*,
No. CV 15-1877 BRO, 2015 U.S. Dist. LEXIS 189137
(C.D. Cal. Aug. 24, 2015)......................................................... 19, 23

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633 (Fed. Cir. 2015) ........................................ 17, 22, 23, 24

*Astornet Techs., Inc. v. Bae Sys., Inc.*,
802 F.3d 1271 (Fed. Cir. 2015) ........................................................ 7

*Cal. Expanded Metal Prods. Co. v. Klein*,
No. CV 16-05968 DDP, 2017 U.S. Dist. LEXIS 70888
(C.D. Cal. May 9, 2017) .................................................................. 21

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012) ............................................ 17, 18, 19

*Disney Enters. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ................................................ 6, 23, 24

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013) ...................................................... 18

*Fox TV Stations v. BarryDriller Content Sys.*,
915 F. Supp. 2d 1138 (C.D. Cal. 2012) .......................................... 23

*Gavrieli Brands, LLC v. Lovie PEARL GmbH*,
No. 2:22-cv-06112-MCS-MRW, 2023 U.S. Dist. LEXIS 169448
(C.D. Cal. Sep. 19, 2023)................................................................ 24

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) .......................................................... 7

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
327 F.3d 1364 (Fed. Cir. 2003) ........................................................ 7

*Merial Ltd. v. Cipla Ltd.*,
681 F.3d 1283 (Fed. Cir. 2012) ...................................................... 23

51374548

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

**Cases (*Cont'd*)**

*Metalcraft of Mayville, Inc. v. Toro Co.*,
    848 F.3d 1358 (Fed. Cir. 2017) ....................................................... 24

*Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*,
    No. SACV 12-463 DOC(MLGx), 2012 U.S. Dist. LEXIS 67950
    (C.D. Cal. May 15, 2012) ............................................................... 18

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ....................................................... 8

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................... 7, 8

*Precise Exercise Equip., Inc. v. Kmart Corp.*,
    No. EDCV 00-312 RT (RCx), 2000 U.S. Dist. LEXIS 21498
    (C.D. Cal. Oct. 30, 2000) ............................................................... 23

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    702 F.3d 1351 (Fed. Cir. 2012) ........................................... 17, 22, 23

*QBAS Co. v. C Walters Intercoastal Corp.*,
    No. SACV 10-406 AG (MLGx), 2010 U.S. Dist. LEXIS 143945
    (C.D. Cal. Dec. 16, 2010) ............................................................... 16

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) ....................................... 6, 17, 18, 21

*Rosen Entm't Sys. v. Vision*,
    343 F. Supp. 2d 908 (C.D. Cal. 2004) ............................................. 7

*Schmeisser GmbH v. Ac-Unity D.O.O.*,
    No. 21-CV-24-SWS, 2021 U.S. Dist. LEXIS 256579
    (D. Wyo. Mar. 19, 2021) ........................................................... 18, 20

*Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*,
    492 F.3d 1350 (Fed. Cir. 2007) ....................................................... 16

# TABLE OF AUTHORITIES
## (*Continued*)

**Page(s)**

**Cases (*Cont'd*)**

*Tinnus Enters., LLC v. Telebrands Corp.*,
   846 F.3d 1190 (Fed. Cir. 2017) ................................................................ 17

*Titan Tire Corp. v. Case New Holland, Inc.*,
   566 F.3d 1372 (Fed. Cir. 2009) ................................................................ 16

*Trajkovski Invest AB v. I.Am.Plus, Elecs., Inc.*,
   No. 2:21-cv-04246-ODW, 2022 U.S. Dist. LEXIS 142207
   (C.D. Cal. Aug. 9, 2022) ........................................................................... 21

*Trebro Mfg. v. FireFly Equip., LLC*,
   748 F.3d 1159 (Fed. Cir. 2014) ...................................................... 6, 17, 18

*TVB Holdings (USA), Inc. v. Enom, Inc.*,
   No. SACV 13-624-JLS, 2014 U.S. Dist. LEXIS 101998
   (C.D. Cal. July 23, 2014) .......................................................................... 21

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
   74 F.4th 1360 (Fed. Cir. 2023) .................................................................... 7

*Westgate Mfg. v. Norco Wholesale Elec. Supply Inc.*,
   No. 5:21-cv-02059-JWH-SPx, 2022 U.S. Dist. LEXIS 139118
   (C.D. Cal. Aug. 3, 2022). .......................................................................... 20

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ......................................................................................... 6

**Statutes**

35 U.S.C. § 271 .................................................................................................. 7

35 U.S.C. § 283 .................................................................................................. 6

U.S. Code § 282 ............................................................................................... 16

**Other Authorities**

Fed. R. Civ. P. 65 ............................................................................................... 6

51374548

## I.    **INTRODUCTION**

Meridian International Co. Ltd. ("Meridian"), an industry innovator and a leading organization in the tool and hardware market, initiated this patent infringement action against ToughBuilt Industries, Inc. ("ToughBuilt") to stop ToughBuilt's – a direct competitor – ongoing infringement of two Meridian patents resulting in irreparable harm to Meridian. Meridian has invested greatly to build its reputation as an industry innovator, and yet ToughBuilt rushed products to the marketplace that utilize technology previously disclosed in Meridian's patent filings and claimed in a presently-asserted patent, thereby depriving Meridian of its first-to-market advantage. Meridian must now compete with products that infringe Meridian's own technology. ToughBuilt's infringement has and continues to tarnish Meridian's reputation as an innovator, as well as further poison the market if ToughBuilt is allowed to continue selling the infringing products. Importantly, ToughBuilt – which has been incurring significant debt and has been suspended from doing further business in California for failure to pay its taxes and whose common stock was recently suspended from trading on Nasdaq – may be unable to satisfy any monetary judgment at the conclusion of this action, which underscores the criticality of stopping ToughBuilt's infringement now to prevent further irreparable harm to Meridian. Meridian respectfully requests that the Court invoke its discretion and grant a preliminary injunction to prevent ToughBuilt from causing further irreparable harm through selling the infringing products.

## II.    **STATEMENT OF FACTS**

### A.    **Meridian's History and Its Products**

Since 1992, Meridian has successfully established itself as one of the leading organizations serving the tool and hardware market, becoming the headquarters for an effective group of manufacturers with the proven capabilities of serving global customers. (Declaration of Tony Kriz in Support of Motion for Preliminary Injunction ("Kriz Decl.") ¶¶ 2-3.) With over 250 employees in six continents, Meridian researches, designs, develops, produces, and sells hand tools, mechanic tools, tool sets, garden tools, and

51374548

organizers like modular storage systems. (*Id*. at 3-4.) Meridian sells the products it makes under several different brand names. (*Id*.)

Meridian's modular storage system components include interlocking toolboxes, organizers, and carts that provide users the ability to select whichever components they need for the job, and allow them to configure the components to facilitate safe storage and transportation to and from the job site. (Kriz Decl. at ¶ 4.) One such configuration is shown to the right. (*Id*. at ¶ 5.)



The market for tools and hardware includes many manufacturers. (Kriz Decl. at ¶ 7.)  Most of these manufacturers – including Meridian – honorably participate in the market by developing their own products, for which they may or may not seek patent protection. (*Id*.)  Other manufacturers seek to take shortcuts by dispensing with research and development costs and choosing instead to just copy the successful designs of others. (*Id*.)  These copycat designs frequently lack the quality of the successful designs on which they are based. (*Id*.)  Consumers can be confused by copycat designs and, if a copycat design feature does not perform well, consumers may avoid purchasing any other products – including those of an innovator – that incorporate a similar design feature. (*Id*.)  To avoid this problem, Meridian diligently and systematically seeks protection of its intellectual property through the patent system to protect its innovations. (*Id*.)  Moreover, Meridian has not licensed its patents, thereby further protecting its inventions by preventing even licensed versions of its design features from entering the marketplace. (*Id*.)

**B.    Meridian's Patents**

Meridian has been an innovator for over 30 years. (Kriz Decl. at ¶ 8.)  In the United States alone, Meridian is the owner of at least 71 issued patents and four actively pending patent applications. (*Id*.)  Two of Meridian's patents are at issue here.

### 1.    Meridian's U.S. Patent No. 11,986,946

One of the patents protecting Meridian's innovations for modular storage system technology is U.S. Patent No. 11,986,946 ("the '946 patent," filed at ECF No. 1-1), issued May 21, 2024, and titled "Connection Structure of Module, Storage Box and Storage Box Assembly." The '946 patent is a continuation of an earlier patent application (U.S. Patent Application Serial No. 18/176,907, "the '907 application")



FIG. 4

that was filed on March 1, 2023, and became publicly available on September 7, 2023. Having filed its patent applications to stake its claim to the inventions disclosed therein, Meridian set about establishing the preferred design configuration to bring to market. (Kriz Decl. at ¶ 9.) Before Meridian could bring its product to market, yet after the disclosure of this patent family was available to the public, ToughBuilt swooped in with a product directly incorporating the teachings of this patent family that were embodied in the '907 application and claimed in the '946 patent. For example, Figure 4 of the '946 patent (shown above to the right) provides an example of an embodiment of the claimed inventions. One advantage of Meridian's patented system is that different sized components can be combined together.

### 2.    Meridian's U.S. Patent No. 11,192,689

Another patent protecting Meridian's innovations for modular storage system technology is U.S. Patent No. 11,192,689 ("the '689 patent," filed at ECF No. 1-2), issued December 7, 2021, and titled "Stacked Storage Container Latch." An embodiment of the claimed inventions is shown in Figure 6 of the '689 patent (shown to the right), which includes



FIG. 6

detail C (circled at the top right of the figure). Meridian has been manufacturing modular storage system products which are sold to consumers under the third-party brand "Kobalt" and promoted as having "CaseStack" modular interconnecting technology, which

3    Case No. 8:24-cv-01840 DDP (JDEx)

practices the claimed inventions of the '689 patent.  (Kriz Decl. at ¶ 10.)  Following the public release of Meridian's products, ToughBuilt began providing products to the same third party, also to be sold under the Kobalt brand and also having CaseStack technology.  (*Id*.)  As discussed below, tool bags produced by ToughBuilt to be sold as Kobalt products having the CaseStack modular technology infringe the '689 patent.

### C.    Facing Financial Ruin, ToughBuilt Copied Meridian's Technology.

ToughBuilt, which until recently was traded on Nasdaq under the symbol TBLT, had been experiencing a significant drop in its value. (Declaration of Ryan LaMotta ("LaMotta Decl.") at ¶ 17.)   Likewise, ToughBuilt reportedly has been incurring a significant debt burden. (*Id*.)  In the face of a continued downward trend in its stock prices, and in a desperate attempt to salvage its company, ToughBuilt sought to ride the coattails of Meridian's successful history of innovation and its recent patent disclosures describing it modular storage system technology.   On October 24, 2023, just six weeks after Meridian's '907 Application was published, ToughBuilt announced the introduction of its StackTech modular storage products. (*See* https://ir.toughbuilt.com/press-releases/detail/158/toughbuilt-industries-launched-innovative-stacktech.)    While this "Hail Mary" attempt may have yielded limited benefits to ToughBuilt (at Meridian's expense), ToughBuilt was unable to pull out of its financial nosedive.  ToughBuilt's stock continued to drop, losing 74% of its value in 2024. (LaMotta Decl. at ¶ 17.)  Following a notice of delisting, trading of ToughBuilt's common stock on Nasdaq was suspended effective August 9, 2024, further compounding its financial problems.  (*Id*.)

### 1.    ToughBuilt's StackTech Products Infringe the '946 Patent.

After the public release of Meridian's groundbreaking technology, ToughBuilt began providing StackTech products, including modular storage systems, organizers, and carts that employ Meridian's technology.  Many of the StackTech products are modular containers containing the patented connecting mechanisms as claimed in the '946 patent.  An example configuration of infringing StackTech products is



51374548

shown in the figure to the right. As described in more detail in § 2, below, ToughBuilt's StackTech products infringe at least claim 1 of the '946 patent.

## 2. ToughBuilt's CaseStack Tool Bags Infringe the '689 Patent.

ToughBuilt infringes the '689 patent through its products offered for sale through a third party, which had already been selling products manufactured by Meridian.  In this regard, some of the modular products made by Meridian, including those using the latching technology claimed in the '689 patent, are sold under the third-party brand "Kobalt" as products featuring the "CaseStack" modular technology.  (Kriz Decl. at ¶ 10.) ToughBuilt subsequently began manufacturing tool bags that are sold under the third-party Kobalt brand as CaseStack tool bags.  (*Id*.)  ToughBuilt's CaseStack tool bags are designed and marketed to interconnect with CaseStack products manufactured by Meridian and which feature Meridian's patented modular technology. (*Id*.) The CaseStack tool bags provided by ToughBuilt include latching technology that infringes the '689 patent. An exemplary CaseStack tool bag is shown in the image to the right, having the modular connection mechanism on the underside.

## D. Meridian Attempted to Stop ToughBuilt's Infringement.

On June 5, 2024 – just two weeks after the '946 patent issued – Meridian's counsel sent a cease-and-desist letter ("Notice Letter") to ToughBuilt's counsel informing them of ToughBuilt's infringement of the '946 patent.  (Kriz Decl. ¶ 11.)  The Notice Letter included a copy of the '946 patent and a claim chart that detailed how ToughBuilt's StackTech products infringe the '946 patent.  (*Id*.)  Consistent with Meridian's history of not licensing its patents, the Notice Letter demanded that ToughBuilt cease and desist its infringing activities and informed ToughBuilt that Meridian would pursue a preliminary injunction if ToughBuilt did not do so. (*Id*.)  ToughBuilt did not respond by the June 21, 2024, deadline (or anytime thereafter) and the StackTech products accused of infringing the '946 patent continue to be sold. (*Id*.)

### III.    LEGAL STANDARD

"The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.  A court may grant preliminary injunctive relief.  Fed. R. Civ. P. 65. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Rather, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* (*quoting Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)).  A party seeking a preliminary injunction must show (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm if no preliminary injunction is granted, (3) the balance of the equities tips in its favor, and (4) an injunction is in the public interest. *Id.* at 20.

### IV.    MERIDIAN IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF.

Each of the four factors strongly weighs in favor of issuing a preliminary injunction. In particular, where, as here, a patent holder provides evidence of direct competition with the alleged infringer, evidence of loss of market share and access to potential customers, and evidence that the alleged infringer may be unable to satisfy a money judgment, there is "no basis" by which a district court could conclude that irreparable harm is not shown. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151 (Fed. Cir. 2011).

#### A.    Meridian Will Prevail on the Merits.

"Likelihood of success on the merits is the most important *Winter* factor" and once shown "the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed." *Disney Enters. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal quotations omitted).

"To prove a likelihood of success on the merits, a patentee must prove that success in establishing infringement is more likely than not." *Trebro Mfg. v. FireFly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014) (internal quotations omitted).  "[O]ne instance of

infringement is sufficient to grant a preliminary injunction." *Rosen Entm't Sys. v. Vision*, 343 F. Supp. 2d 908, 915 n.2 (C.D. Cal. 2004). And as set forth in the Declaration of John D. Pratt, Ph.D., P.E. in Support of Motion for Preliminary Injunction ("Pratt Decl."), many of ToughBuilt's StackTech products infringe at least one claim of the '946 patent, and ToughBuilt's CaseStack tool bags infringe at least one claim of the '689 patent.

"A court determines patent infringement by first construing the claims and then applying the construed claims to the accused process or product." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 327 F.3d 1364, 1367 (Fed. Cir. 2003). "A patent is directly infringed when a person 'without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent.'" *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 74 F.4th 1360, 1367 (Fed. Cir. 2023) (quoting 35 U.S.C. § 271(a)). Contributory infringement occurs when a party sells, or offers to sell, a component for use in a patented system, where the component has no substantial non-infringing uses. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850-51 (Fed. Cir. 2010); 35 U.S.C. § 271(c). Induced infringement occurs when the accused infringer knowingly encourages others to infringe a patent. *Astornet Techs., Inc. v. Bae Sys., Inc.*, 802 F.3d 1271, 1279 (Fed. Cir. 2015).

### 1.    <u>The Claim Terms Have Their Plain and Ordinary Meanings.</u>

The first step in determining infringement is to determine the scope of the invention by construing, if necessary, the terms of the asserted claims. When construing patent claims, the words in the claim are generally given their ordinary and customary meaning to a person of ordinary skill in the art in question at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). Here, the claims are directed to mechanical devices and the terms used in the '946 patent and the '689 patent have well-accepted meanings in the field which are readily understood by a person of ordinary skill in the art. (Pratt Decl. at ¶ 5.) Given the technology, the patent, the file history, and the experience of the inventors, a person of ordinary skill in the art for the asserted patents would have at least a bachelor's degree in engineering and two years of

51374548

education and/or experience in mechanical design. (*Id.* at ¶ 4.) Thus, there is no reason to deviate from the claim terms' ordinary meanings. *Phillips*, 415 F.3d at 1314; *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (claims are construed when reasonably disputed, but "district courts are not (and should not be) required to construe every limitation present in a patent's asserted claims").

## 2.    **ToughBuilt Infringes at Least Claim 1 of the '946 Patent.**

As set forth in the Pratt Declaration, many of the StackTech products (the "Accused StackTech Products"[1]) share common features that meet all of the limitations of at least claim 1 of the '946 patent. (Pratt Decl. at ¶ 7. Ex. 3.) Claim 1 of the '946 patent includes

---

[1] The following are the Accused StackTech Products: ToughBuilt StackTech 22.3-in W x 26-in H Black Plastic/Metal Wheels Tool Box (Model TB-B1-B-70R); ToughBuilt StackTech XL 21-in W x 15.6-in H Black Plastic/Metal Tool Box (Model TB-B1-B-70); ToughBuilt StackTech Large 21-in W x 11.7-in H Black Plastic/Metal Tool Box (Model TB-B1-B-50); ToughBuilt StackTech 21-in Black Plastic/Metal Tool Box (Model TB-B1-B-30); ToughBuilt StackTech Crate 21-in W x 11.4-in H Black Plastic/Metal Tool Box (Model TB-B1-X-50); ToughBuilt StackTech Compact 10.4-in Black Plastic/Metal Tool Box (Model TB-B1-B-60C); ToughBuilt StackTech 11-Compartment Large Plastic Small Parts Organizer (Model TB-B1-O-30); ToughBuilt 22-Compartment StackTech Low-Profile Plastic Small Parts Organizer (Model TB-B1-O-10); ToughBuilt 12-Compartment StackTech Compact Low-Profile Plastic Small Parts Organizer (Model TB-B1-O-10C); ToughBuilt StackTech XL 21-in W x 15.6-in H Ball-bearing 3-Drawer Black Plastic/Metal Tool Box (Model TB-B1-D-70-3); ToughBuilt StackTech 21-in W x 8.8-in H Ball-bearing 1-Drawer Black Plastic/Metal Tool Box (Model TB-B1-D-30-1); ToughBuilt StackTech XL White 38-Quart Insulated Chest Cooler (Model TB-B1-C-70); and ToughBuilt StackTech Compact White 16-Quart Insulated Chest Cooler (Model TB-B1-C-60C) (collectively, the "Accused StackTech Products").

51374548

the following limitations:

(*See* ECF No. 1-1 at column 15, lines 5-37 (red annotation added for ease of readability)).

**1[a]** 1. A storage box comprising:

**1[b]** a first connection part disposed on one area of said storage box connectable to a second connection part of another storage box;

**1[c]** wherein, said first connection part comprises a mounting body, a locking buckle movable with respect to said mounting body, and a first resilient member located between said mounting body and said locking buckle, wherein said first resilient member keeping said locking buckle automatically in a locked state;

**1[d]** wherein, said second connection part of the other storage box comprises a mating part interlockable with the locking buckle,

**1[e]** wherein the locking buckle is configured to slide inward with respect to the mounting part so that the locking buckle is automatically lockable with the mating part of the other storage box by action of said first resilient member when the locking buckle is aligned with the mating part of the other storage box;

**1[f]** a locking part cooperating with the locking buckle, wherein manual movement of the locking part causes the locking buckle to move to an unlocked state; and

**1[g]** a stop part, wherein when the stop part projects outward with respect to a locking path of the locking part, said locking part is not automatically lockable and said first connection part is in a state of remaining unlocked from said second connection part, wherein the stop part is retractable, said stop part being extended when said first connection part is in a holding unlocked state with said second connection part of the other storage box, and said stop part being compressed when said first connection part is in a locked state with said second connection part.

The ToughBuilt StackTech Tool Box (model number TB-B1-B-30, the "ToughBuilt Tool Box," shown in the image to the right) satisfies the limitations of this claim, as detailed below. (Pratt Decl. at ¶ 7.) While the ToughBuilt Tool Box is analyzed as an exemplary product for purposes of this Memorandum, this analysis applies to all Accused StackTech Products. (*Id.*)



**Element 1[a]:**    The ToughBuilt Tool Box is a storage box, meeting the requirements of this limitation. (Pratt Decl., Ex. 3 at pp. 1-3.)

51374548

**Element 1[b]:**  The ToughBuilt Tool Box includes a first connection part located on the front face of the storage box, near the bottom edge, as shown in the image to the right having yellow and gray components.  This first connection includes a sliding component that moved in and out of the Tool Box.  Another storage box is, for example, the ToughBuilt StackTech 11-Compartment Large Plastic Small Parts Organizer (TB-B1-O-30) (the "Organizer"), as shown in the figures having the clear lid component.  The sliding component of the Tool Box's first connection part is configured to connect with a recess in a second connection part that is located on the topside of the Organizer, enabling those devices to be connectable.  Thus, the requirements of this limitation are satisfied. (Pratt Decl., Ex. 3 at pp. 3-7.)





**Element 1[c]:**  The first connection part of the Tool Box includes a mounting body




(item A in the images to the left), a locking buckle (item B in the images to the left), and a spring as a first resilient member, which is located between the locking buckle and the rear of the mounting body, as shown in the figures.  The locking buckle extends and retracts with respect to the mounting body. Furthermore, the force applied by the spring to the locking part automatically biases the locking buckle toward the extended position, corresponding to the locked state.  Therefore, each of the requirement for this claim limitation is satisfied by the Tool Box.  (Pratt Decl., Ex. 3 at pp. 8-13.)

**Element 1[d]:**  The second connection part of the Organizer defines a recess (item C in the image on the right), which is a mating part that is interlockable with the locking buckle when the Tool Box



is stacked on the Organizer. Thus, the requirements of this limitation are satisfied. (Pratt Decl., Ex. 3 at p. 14.)

**Element 1[e]:** The Tool Box (as well as other Accused StackTech Products) is



advertised as being automatically lockable ("auto-locking") when lowered onto a compatible device, such as the Organizer. *See*, *e.g.*, the image to the left

As shown in the first of the four images below, the first connection part of the Tool Box is aligned with the second connection part of the Organizer when the Tool Box is positioned atop the Organizer. If the locking part of the Accused Tool Box is extended, the locking buckle contacts the second connection part (at the red arrow), which results in a force that is applied to the locking buckle that forces it to slide inward (see the second and third images). The locking buckle remains retracted until such time that the locking part is clear of the second connection part and aligned with the mating part, at which time the locking buckle extends due to the bias of the resilient member and automatically locks with the recess of the Organizer (fourth image). Therefore, each of the requirement for this claim limitation are satisfied by the Tool Box. (Pratt Decl., Ex. 3 at pp. 15-16.)



**Element 1[f]:** The Tool Box includes a locking part (item D in images to the right and below) that includes the locking buckle (item B in the images below). Because the locking buckle is disposed on the locking part, movement



11          Case No. 8:24-cv-01840 DDP (JDEx)

of the locking part necessarily results in movement of the locking buckle.

In this regard, as the locking part is manually moved from an extended to a retracted configuration, such as by movement of the silver-colored handle from a locked to an unlocked configuration, the locking buckle is moved to an unlocked stated in which it is retracted relative to the mounting body (as shown in the images below). Specifically, when the silver-colored handle is in a locked position (on the left), the locking buckle is extended. When the silver-colored handle is in an unlocked position (in either of the positions on the right), the locking buckle is retracted. Therefore, each of the requirements for this claim limitation are satisfied by the Tool Box. (Pratt Decl., Ex. 3 at pp. 17-19.)



**Element 1[g]:** The Tool Box includes a stop part, specifically a horizontal bar (item E in the image to the left) that has guide grooves, the horizontal bar being attached



to the silver-colored handle mechanism. The first connection part is in an override unlocked position (locking buckle retracted, as shown in the image to the left) when the stopping part is extended or projecting outward (fully to the right) with respect to the locking path (the inward and outward direction of movement of the locking part) of the locking part. In this configuration, the stopping part prevents forward movement (extension) of the locking part and the locking buckle, thereby maintaining the device in a state of remaining unlocked with the second connection part and preventing automatic

locking.

The stop part of the Tool Box (item E) may alternate between an extended and a retracted, or compressed, position with respect to the locking path (extended to the right in the image above on the left, and retracted to the left in the image to the right)  When the stop part is extended (as in the image to the left), the first



connection part is in a holding unlocked state relative to the Organizer, in which the locking part and locking buckle of the Tool Box remain retracted relative to the mounting body.  When the stop part is retracted (as in the image to the right), the first connection part of the Tool Box is in a locked state relative to the Organizer, in which the locking part and locking buckle of the Tool Box are extended relative to the mounting body.  Therefore, each of the requirements for this claim limitation are satisfied by the Tool Box.  (Pratt Decl., Ex. 3 at pp. 19-25.)

The Tool Box is configured to modularly connect to the Organizer and, as such, they meet each and every element of claim 1 and therefore infringe that claim.  (*See* Pratt Decl., ¶¶ 7, 10, Ex. 3 *passim*.)  Because the other Accused StackTech Products have the same infringing features as the Tool Box and/or the Organizer analyzed above, they infringe for the same reasons. (*See* Pratt Decl., ¶ 7.)

### 3.    <u>ToughBuilt Infringes at Least Claim 1 of the '689 Patent.</u>

ToughBuilt's infringement of the '689 patent is especially egregious as it targeted the same third party for which has been selling products originating from Meridian and which are sold under the same "Kobalt" brand having the same "CaseStack" technology. In this regard, ToughBuilt now provides modular tool bags to that third party that are specifically designed to use Meridian's patented latching technology to connect to products manufactured by Meridian. (Kriz Decl. ¶ 10.)  Specifically, ToughBuilt manufactures infringing products incorporating Meridian's patented technology to be sold

under the third-party Kobalt brand as having "CaseStack" capability.

As set forth in the Pratt Declaration, the CaseStack tool bags (the "Accused Modular Tool Bags"2) share common features that infringe at least claim 1 of the '689 patent. While one exemplary product is analyzed for purposes of this Memorandum, the analysis applies to both Accused Modular Tool Bags. (Pratt Decl. at ¶¶ 8-10).

Claim 1 of the '689 patent includes three elements, identified as follows:

1[a]   **1.** A stackable storage system comprising:

1[b]   a first storage container configured and arranged to be selectively connected to a second storage container,

1[c]   wherein the first storage container comprises of at least one locking groove and the second container comprises a sliding mechanism for selectively engaging the locking groove to connect and hold the first storage container to the second storage container, and

1[d]   wherein a portion of the sliding mechanism extends laterally away from a side surface of the second container when the sliding mechanism is disengaged from the locking groove and wherein the portion of the sliding mechanism is coplanar with the side surface of the second container when the sliding mechanism is engaged with the locking groove.

(ECF No. 1-2 at column 6, lines 2-17 (red annotations added for ease of readability)).  The CaseStack Tool Bag (model number KB-CS-S20, "Tool Bag") with the Kobalt CaseStack storage boxes satisfies each and every limitation of this claim, as detailed below.  (Pratt Decl. at ¶¶ 9-10, Ex. 4.)

**Element 1[a]:**  The CaseStack Tool Bag together with other modular Kobalt CaseStack storage boxes, including but not limited to the Kobalt CaseStack Plastic Tool Box (KCS-SSBOX1-03, hereinafter the "Kobalt Box") is a stackable storage system. Therefore, each of the requirements for this claim limitation are satisfied.  (Pratt Decl., Ex. 4 at pp. 1-3.)

---

2 The following are the Accused Modular Tool Bags: Kobalt CaseStack Blue Polyester 20-in Zippered Tool Bag (model number KB-CS-S20) and Kobalt CaseStack Blue Polyester 20-in Tool Tote (model number KB-CS-T20).

51374548

**Element 1[b]:**  The Tool Bag is a first storage container, including for the storage of tools, as shown in the image to the right.  The Tool Bag is configured and arranged to be selectively connected to a second storage container, specifically one having the CaseStack modular technology.  The Kobalt Box is one of many Kobalt storage containers that include the CaseStack modular technology, and therefore satisfies the second storage container limitation.  (Pratt Decl., Ex. 4 at pp. 3-5.)





**Element 1[c]:**  The Tool Bag (the first storage container) includes at least one locking groove, shown in the circled portion of the image of the tool bag to the left.  The



Kobalt Box (the second storage container) includes a sliding mechanism, shown with the blue component in the circled portion of the image of the box to the left.  The sliding mechanism near the top of the Kobalt Box is configured to selectively engage with the locking groove near the bottom of Tool Bag in order to connect the Tool Bag to the Kobalt Box and hold them together, as indicated in the image to the right.  (Pratt Decl., Ex. 4 at pp. 5-11.)





**Element 1[d]:**  The blue sliding mechanism of the Kobalt Box extends away from the side of the Kobalt Box (the second container) when the blue sliding member is disengaged from the locking groove of the Tool Bag.  Likewise, the blue sliding mechanism of the Kobalt Box is coplanar with the side of the Kobalt Box when the blue handle is in the closed position, as when it is engaged with the locking groove of the Tool Bag.  The images show the blue sliding mechanism in the open (for disengagement) and closed (for engagement) configurations. (Pratt Decl., Ex. 4 at pp. 11-13.)





51374548

The CaseStack Tool Bag when combined with other CaseStack components therefore meets each and every element of claim 1, resulting in direct infringement. (Pratt Decl. at ¶¶ 9-10; Ex. 4 *passim*.) Because both Accused Modular Tool Bags have the same infringing features as the CaseStack Tool Bag analyzed above (*id*.), each infringes for the same reasons. Notably, as the CaseStack connector (with the locking groove) on the Accused Modular Tool Bags is specially made with the CaseStack technology and to interconnect with other CaseStack components in accordance with the '689 patent – and otherwise has no significant non-infringing use (*id*.) – ToughBuilt is a contributory infringer by offering these products. Finally, ToughBuilt's branding of the Accused Modular Tool Bags with the "CaseStack" functionality constitutes induced infringement, as it is actively promoting the use of the Accused Modular Tool Bags with other CaseStack components, which results in direct infringement of claim 1 of the '689 patent.

### 4.    The Asserted Patents Are Valid.

Each and every claim of the Asserted Patents is entitled to a statutory presumption of validity. 35 U.S. Code § 282. The burden of establishing patent invalidity rests with ToughBuilt and must be satisfied by clear and convincing evidence. *See Takeda Chem. Indus. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007). This presumption of validity applies equally during preliminary injunction proceedings as throughout the litigation. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009); *see also QBAS Co. v. C Walters Intercoastal Corp.*, No. SACV 10-406 AG (MLGx), 2010 U.S. Dist. LEXIS 143945, at *9 (C.D. Cal. Dec. 16, 2010) ("Because an issued patent enjoys the presumption of validity, a patentee seeking a preliminary injunction generally need not address the issue of validity in its initial moving papers."). Absent a showing by ToughBuilt that it is likely to succeed in proving, by clear and convincing evidence, some invalidity or unenforceability defense, "the very existence of [each Asserted Patent] with its concomitant presumption of validity satisfies [Meridian's] burden of showing a likelihood of success on the validity issue." *See Titan Tire*, 566 F.3d at 1377.

### B.    Meridian Will Suffer Irreparable Harm Absent an Injunction.

Meridian has already suffered and, unless injunctive relief is granted, will continue to suffer irreparable harm.  "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).  Evidence of irreparable harm may be from before and after the patent issued.  *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1207-08 (Fed. Cir. 2017).  "Direct competition in the same market is certainly one factor suggesting ***strongly*** the potential for irreparable harm without enforcement of the right to exclude."  *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) (emphasis added) (noting that a patentee can suffer irreparable injury even if it doesn't practice the claimed invention).  A patentee's unwillingness to license the patents-in-suit weighs in favor of a finding of irreparable harm.  *See id.* (patentee's "unwillingness to license favored finding irreparable injury").  An accused infringer's ability to satisfy a damages award should also be considered when assessing irreparable harm.  *Robert Bosch*, 659 F.3d at 1155.

### 1.    <u>Direct Competition Renders Injunctive Relief Appropriate.</u>

There is a strong showing of irreparable harm to a patent holder when the patent holder and accused infringer are direct competitors.  *Trebro*, 748 F.3d at 1171 (when the patent holder and accused infringer "are direct competitors selling competing products in this market … the record strongly shows a probability for irreparable harm"); *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 653 (Fed. Cir. 2015) (Reyna, J., concurring) ("We have repeatedly held after *eBay* that competition between the patentee and the infringer, particularly direct competition, strongly militates toward a finding of irreparable harm.").

Meridian and ToughBuilt are direct competitors in the same market competing for the same customers for modular storage system components.  ToughBuilt's Accused StackTech Products are sold in at least one store in the same aisle as modular storage system products manufactured by Meridian.  (*See* Kriz Decl. at ¶ 6.)  ToughBuilt's infringement allows it to capture shelf space from Meridian's products, resulting in lost

sales that are very difficult to quantify. (*See* LaMotta Decl. at ¶¶ 12-13.)

Moreover, because ToughBuilt chose to copy Meridian's technology rather than independently develop its own, Meridian is being forced to compete against its own patented technology absent an injunction. *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions."). The infringement therefore destroys Meridian's competitive advantage. (*See* LaMotta Decl. at ¶ 13.) An injunction is proper and appropriate given Meridian's irreparable harm.

### 2.    <u>ToughBuilt's Infringement Is Causing Irreparable Harm to Meridian's Business Opportunities.</u>

An innovator's potential loss of the ability to control its reputation constitutes irreparable harm for purposes of preliminary injunctive relief. *Neighborhood Assistance Corp. of Am. v. First One Lending Corp.*, No. SACV 12-463 DOC(MLGx), 2012 U.S. Dist. LEXIS 67950, at *53-54 (C.D. Cal. May 15, 2012). Additionally, an injunction analysis should consider loss of market share and loss of customers. *Trebro*, 748 F.3d at 1170; *Robert Bosch*, 659 F.3d 1151. "Importantly, the right to exclude others from a specific market, despite the size, is an essential element of the patent right and further evidences irreparable harm." *Schmeisser GmbH v. Ac-Unity D.O.O.*, No. 21-CV-24-SWS, 2021 U.S. Dist. LEXIS 256579, at *38 (D. Wyo. Mar. 19, 2021) (granting preliminary injunction in patent infringement action).

The Federal Circuit has recognized that "[d]uring the growth stage of a product, it is particularly crucial to be able to distinguish oneself from competitors. This includes building the brand, expanding the customer base, and establishing one's reputation and leadership in the market." *Celsis in Vitro*, 664 F.3d at 931. It therefore found a preliminary injunction was appropriate when evidence was presented regarding "the difficulty in quantifying the effect on reputation and business due to [the patent holder] being precluded from marketing to potential and existing customers that it is the exclusive

market leader." *Id*. at 930.  And in this District, "[i]n cases where a patentee seeks to establish a reputation for expertise and advanced products, '[m]oney damages alone cannot restore the technological lead-time that the Plaintiff would have enjoyed but for the infringement of the Defendant.'" *Advanced Transit Dynamics, Inc. v. Ridge Corp.*, No. CV 15-1877 BRO (MANx), 2015 U.S. Dist. LEXIS 189137, at *69 (C.D. Cal. Aug. 24, 2015) (quoting *EyeTicket Corp. v. Unisys Corp.*, 155 F. Supp. 2d 527, 548 (E.D. Va. 2001)).  Here, Meridian has established itself as an innovator over the past 30 years and through its over 70 patents and four active patent applications in the United States alone. (Kriz Decl. ¶ 8.)  And by not licensing its patented technology, Meridian enjoys a reputation of being a market leader in introducing and exclusively providing new technology. (Kriz Decl. ¶¶ 7, 13.)

After Meridian's patent disclosure was made public, but before Meridian had finalized the design of products protected by the '946 patent for release to consumers, ToughBuilt began marketing and selling its infringing StackTech products employing the patented technology claimed in the '946 patent.  (Kriz Decl. at ¶ 12.)  As a result, Meridian's products will not be considered "new" when released, and Meridian has forever lost the opportunity to reaffirm its reputation as an innovator to the relevant market participants.  (*Id*.)  ToughBuilt's infringement has thus caused Meridian to lose its "first mover" economic benefits, such as marketplace perception as an innovator and increased future sales due to strengthened customer relationships.  (LaMotta Decl. at ¶ 14.)  ToughBuilt's release of these infringing products at prices over which Meridian had no control has further deprived Meridian to establish the price points for its own technology (infringed by ToughBuilt) in a manner that Meridian believes will have the greatest impact to Meridian's business.  (*Id*.)  The overall impact to Meridian's reputation as an innovator and loss of the "first mover" advantage will continue into the future and Meridian's overall economic losses cannot be accurately calculated.  (*Id*.)

Brick and mortar retailers are offering ToughBuilt's infringing modular storage products for sale in the same aisle as Meridian's modular storage system.  (Kriz Decl. at

¶ 6.)  Beyond the harm from the sale of infringing products, this product placement results in other harm to Meridian that is difficult to quantify.  To begin, retail shelf space is limited, resulting in direct competitors, such as Meridian and ToughBuilt, to engage in highly competitive battles for that valuable space.  (LaMotta Decl. at ¶ 12.)  ToughBuilt's infringement allows it to capture retail shelf space that otherwise would have been occupied by Meridian's products (its patented products and other versions or accessory products that would have had the space but-for the infringement), resulting in lost sales for Meridian's various revenue streams.  (*Id*.)

ToughBuilt's infringement, as set forth above, has diminished Meridian's market share and likely will continue to do so.  (LaMotta Decl. at ¶ 16.)  In this regard, the loss of market share extends beyond lost sales and indicates that a company's direct competitor is attracting more customers and gaining more influence in the marketplace.  (*Id*.)  Additionally, a direct competitor's increase in market share is indicative of closer customer relationships, which in turn allow the infringer – here, ToughBuilt – to have a greater likelihood of future sales of unrelated products and future increased in the valuable shelf space. (*Id*.)  This harm, which Meridian is already experiencing, includes intangible components that are difficult to quantify and may not be known until years into the future. (*Id*.)  These losses of market share demonstrate irreparable harm. (*Id*.)

Also, Meridian's patents grant it with the right to prevent ToughBuilt and others from making, using, and selling the claimed inventions.  *Westgate Mfg. v. Norco Wholesale Elec. Supply Inc.*, No. 5:21-cv-02059-JWH-SPx, 2022 U.S. Dist. LEXIS 139118, at *14 (C.D. Cal. Aug. 3, 2022) (noting "the 'right to exclude others from making, using, offering for sale, or selling' a patented invention is the very right ensured by a patent" and granting permanent injunction); 35 U.S.C. § 154(a)(1).  Rather than being able to enjoy this right, for which Meridian has invested its resources, Meridian's sales of its modular storage system products currently have to compete with its own patented technology sold in ToughBuilt's infringing products.  This situation results in further irreparable harm.  *See Schmeisser GmbH*, 2021 U.S. Dist. LEXIS 256579 at *38.

51374548

### 3.     ToughBuilt Is Unlikely to Satisfy a Monetary Award.

"A district court should assess whether a damage remedy is a meaningful one in light of the financial condition of the infringer before the alternative of money damages can be deemed adequate." *Robert Bosch*, 659 F.3d at 1155.  That an accused infringer "may be judgment-proof, limit[s] the deterrent effect of money damages." *Cal. Expanded Metal Prods. Co. v. Klein*, No. CV 16-05968 DDP (MRWx), 2017 U.S. Dist. LEXIS 70888, at *15 (C.D. Cal. May 9, 2017).

Assuming Meridian prevails in this action, it is highly questionable whether ToughBuilt will still be a viable entity at the conclusion of the litigation, let alone be able to satisfy a monetary judgment.  ToughBuilt's stock price declined by 74% this year, reflecting investors' negative view of ToughBuilt's future prospects. (*See* LaMotta Decl. at ¶ 17.)  ToughBuilt has a significant debt burden and its stock was recently delisted, limiting its ability to raise money.  (*Id*.)  ToughBuilt is reportedly having trouble paying its current debts, making it highly questionable that it will be able to pay a future damages award.  (*Id*.)  ToughBuilt's "questionable financial condition" is further evidence that monetary damages would be an inadequate remedy. *Robert Bosch*, 659 F.3d at 1155 ("importantly, the questionable financial condition of both [defendant] and its parent company reinforces the inadequacy of a remedy at law"); *see also TVB Holdings (USA), Inc. v. Enom, Inc.*, No. SACV 13-624-JLS (DFMx), 2014 U.S. Dist. LEXIS 101998, at *15 (C.D. Cal. July 23, 2014) ("An award of monetary damages is inadequate, because it is unlikely Defendant will be able to pay the damages in full, and because monetary damages alone would not prevent Defendant from continuing to infringe.").

As further evidence of ToughBuilt's financial straits and its ability to satisfy any judgment, ToughBuilt is currently listed as "not in good standing" with the California Franchise Tax Board.  (*See* LaMotta Decl. at ¶ 17.)  Unless and until ToughBuilt can regain its standing with the Franchise Tax Board, it is precluded from even opposing this motion or participating in this litigation.  *Trajkovski Invest AB v. I.Am.Plus, Elecs., Inc.*, No. 2:21-cv-04246-ODW (JEMx), 2022 U.S. Dist. LEXIS 142207, at *5 (C.D. Cal. Aug.

9, 2022) (a foreign corporation's "forfeited status holds the same legal consequences as those of a suspended corporation, including a loss of litigation privileges"). If ToughBuilt cannot even pay its taxes in California to remain a business in good standing, it is difficult to imagine that it will be able to satisfy any monetary judgment from this action.

ToughBuilt's questionable financial condition and its inability to satisfy any damage award at the conclusion of this action weighs in favor of a finding of irreparable harm to Meridian.

### 4.     Meridian Does Not License Its Patents.

An assessment of irreparable harm also considers whether a patentee has licensed its patents-in-suit. A finding that the patentee has licensed its patents weighs against a finding of irreparable harm, while a finding that the patentee does not license the patented technology weighs in favor of finding an irreparable injury. *Presidio Components*, 702 F.3d at 1363 (patentee's "unwillingness to license favored finding irreparable injury"); *Apple Inc.*, 809 F.3d at 655 ("patentee's willingness to license can militate against a finding of irreparable harm, but it does not foreclose such a finding").

Here, Meridian has never licensed the Asserted Patents, nor has it licensed *any* of its patents. (Kriz Decl. at ¶ 13.) Meridian's strategic decision to not license any of its patents is consistent with its history of choosing to stand out as an industry innovator rather than to use its patents as license-fee-generation tools. (*Id*.) Indeed, Meridian identified needs in the marketplace, devised novel and innovative solutions, invested in patent protections for its inventions, and successfully obtained the Asserted Patents for its unique innovations to an excited marketplace, all of which furthered its position as a market innovator. (*Id*.) And now, after having received the patents, Meridian is working to develop products that incorporate the patented technology and bring them to market. (*Id*.) For example, Meridian is in active negotiations to sell a new line or products to its third-party end-customer retailer that incorporates the patented technology. (*Id*.) That is Meridian's way: innovate, protect, and succeed by making sales of its own products. (*Id*.) Meridian is unwilling to license the Asserted Patents to anyone, much less so to a direct

51374548

competitor like ToughBuilt. (*Id.*) These facts support that Meridian would suffer irreparable harm in the event a preliminary injunction is not granted. *Presidio Components*, 702 F.3d at 1363; *Precise Exercise Equip., Inc. v. Kmart Corp.*, No. EDCV 00-312 RT (RCx), 2000 U.S. Dist. LEXIS 21498, at *16 (C.D. Cal. Oct. 30, 2000) ("refusal to grant licenses weighs in favor of a finding that monetary damages will be inadequate"); *Advanced Transit Dynamics*, 2015 U.S. Dist. LEXIS 189137 at *82 (finding monetary damages insufficient to compensate for harm when patent holder has never licensed the asserted patents).

### C.    The Balance of the Hardships Favors Entering an Injunction.

In considering a preliminary injunction, the Court must balance the equities of the injury to Meridian if an injunction is not entered, on one hand, with the equities of the injury to ToughBuilt if an injunction is entered, on the other hand. *Disney*, 869 at 866-867 (internal quotations omitted). This balancing is performed in light of "the long-settled principle that harm caused by illegal conduct does not merit significant equitable protection." *Id.* "As [the Federal Circuit has] noted, '[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.'" *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1306 (Fed. Cir. 2012); *see also Fox TV Stations v. BarryDriller Content Sys.*, 915 F. Supp. 2d 1138, 1147 (C.D. Cal. 2012) ("To the extent that the Court finds that Plaintiffs are likely to succeed on the merits here, then Defendants have no equitable interest in continuing an infringing activity.").

Here, ToughBuilt is making, selling, and offering to sell products that incorporate Meridian's patented inventions, despite having no license, authorization, or authority to do so. These infringing acts are causing substantial hardship to Meridian as described above. *See Apple Inc.*, 809 F.3d at 646 ("substantial hardship" placed on patentee who has lost market share and lost downstream sales and is forced to compete against its own patented invention). Meridian will continue to suffer this harm unless and until the Court grants an injunction. On the other hand, to the extent that ToughBuilt may sustain any

harm from an injunction curtailing its illegal infringement, ToughBuilt "does not merit significant equitable protection" from that harm.  *Disney*, 869 F.3d 866-867.

Any hardship that may be incurred by ToughBuilt in curtailing its illegal activities in compliance with a preliminary injunction is significantly outweighed by the hardship suffered by Meridian if ToughBuilt is allowed to continue making, selling, and offering to sell its infringing products.  The balance of the hardships heavily weighs in favor of Meridian and, therefore, the granting of a preliminary injunction.

## D.    The Public Interest Favors Entering an Injunction.

The final step when considering an injunction is to analyze the public interest.  "In considering whether the public interest favors the grant of an injunction, the district court should focus on whether a critical public interest would be injured by the grant of injunctive relief."  *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1369 (Fed. Cir. 2017) (affirming district court's grant of a preliminary injunction based in part on the public interest's favoring an injunction preventing the sale of infringing products where public could buy patented product or other non-infringing products).  "[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions."  *Apple Inc.*, 809 F.3d at 647; *Gavrieli Brands, LLC v. Lovie PEARL GmbH*, No. 2:22-cv-06112-MCS-MRW, 2023 U.S. Dist. LEXIS 169448, at *16 (C.D. Cal. Sep. 19, 2023) (same, noting the examples of "countervailing factors" include "some lifesaving product" or "product critical to the public interest").

Here, ToughBuilt is not offering a lifesaving drug whose absence may put the public at mortal risk.  Rather, ToughBuilt offers stacking and modular tool box and tool bag components employing Meridian's patented technology (as well as other non-accused tool boxes and tool bags that would be unaffected by this injunction).  The public can still purchase ToughBuilt's other tool boxes and organizers that do not use the patented technology.  Under these circumstances, the public interest weighs heavily in favor of encouraging innovation through the grant of a preliminary injunction.  *See Metalcraft*, 848

51374548

F.3d at 1369 (affirming preliminary injunction wherein the district court "concluded that in light of the importance of encouraging innovation and in light of the fact that the public can continue to obtain the patented suspension system from Scag or other non-infringing mowers from Toro, the public interest favors the issuance of an injunction").

Granting Meridian's request for a preliminary injunction encourages innovation and, therefore, promotes the public's interest by protecting the patent system through enjoining ToughBuilt from infringing the Asserted Patents.

## V.     **CONCLUSION**

For all the reasons set forth above, Meridian respectfully requests that this Court grant its motion for a preliminary injunction to enjoin ToughBuilt from infringing the '964 patent and the '689 patent through its Accused StackTech Products and Accused Modular Tool Bags.

DATED:  August 26, 2024                    Respectfully submitted,

                                           **EVERSHEDS SUTHERLAND (US) LLP**

                                           */s/ Scott A. Penner*
                                           SCOTT A. PENNER, CA Bar No. 253716
                                               ScottPenner@eversheds-sutherland.com
                                           REGIS C. WORLEY, JR., CA Bar No. 234401
                                               RegisWorley@eversheds-sutherland.com
                                           12255 EL CAMINO REAL, SUITE 100
                                           SAN DIEGO, CALIFORNIA  92130
                                           TELEPHONE:     858.252.6502
                                           FACSIMILE:     858.252.6503

                                           Attorneys for Plaintiff
                                           MERIDIAN INTERNATIONAL CO., LTD.

51374548

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the Electronic Service List for this case.

Executed on August 26, 2024.

**EVERSHEDS SUTHERLAND (US) LLP**

*/s/ Scott A. Penner*
SCOTT A. PENNER, CA Bar No. 253716
ScottPenner@eversheds-sutherland.com

Attorneys for Plaintiff
MERIDIAN INTERNATIONAL CO., LTD.

51374548